ALEXANDER A. BUCKNER et al. *v.* STANLEY
JONES et al.

LOUIS BUCKNER *v.* STANLEY JONES et al.
[Nos. 55, 56, January Term, 1929.]

240

*Decided April 4th, 1929.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Louis Hollander,* with whom was *David Ash* on the brief, for the appellants.

*Samuel H. Hoffberger, Edwin T. Dickerson,* and *Leon I. Kappelman,* submitting on brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Stanley Jones and Eliza, his wife, on October 20th, 1926, filed, in Circuit Court No. 2 of Baltimore City, their bill of complaint against Alexander A. Buckner and Elsya, his wife. In it they alleged that on March 15th, 1919, those defendants sold to them the leasehold property known as 405 South Bond Street in that city for $5,000, the purchase price to be paid out of weekly instalments of $12.50, from which was to be deducted current charges and assessments, and interest at six per cent. per annum on the unpaid balance of the purchase money; that the vendors agreed, upon the payment of the purchase price, to convey the property to them free of all liens except the annual ground rent charged against it, and that, pending the completion of the purchase, the vendees were to have possession of it; that pursuant to that agreement they paid the defendants $6,155.20, for which they exhibited receipts, and $1,162.50, represented by receipts which they had delivered to the defendants but which they had "confiscated and destroyed"; that several instalments were overdue, and that they had been tendered to the defendants but that they refused to accept them. Finally, they charged that, although they had performed all the requirements imposed upon them by the contract, the defendants refused to perform their part of it; and that, although thereto requested, they had failed to account for the money paid them under the

agreement, but had threatened to oust the complainants from the property. Upon those averments they prayed: (1) that the agreement be specifically enforced; (2) that the defendants be required to account for money paid them under the agreement; (3) that upon the full payment of the purchase price of the property the defendants be required to convey it to the complainants free of all liens excepting the annual ground rent; and (4) that they the defendants be enjoined from interfering with the complainants' possession of the property.

On October 24th, 1928, about two years later, the complainants filed a petition in which they alleged that, after the defendants had appeared and answered that bill, the case was referred to the court's auditor for an account, and that thereafter, the cause standing ready for hearing, testimony was taken and counsel for the parties heard; that at that hearing it appeared from the testimony that, while Alexander A. Buckner and Elsya, his wife, held the record title to the property, one Louis Buckner was the real owner thereof; "that he exercises full control thereover, negotiated the sale of said property to your petitioners with the acquiescence of the said Alexander A. Buckner and Elsya Buckner, having received the purchase price in various instalments from the petitioner and retaining the same for his own use, without accounting to the said Alexander A. Buckner and Elsya Buckner; originally purchased and paid for said property, recording the title in the name of Alexander A. Buckner and Elsya Buckner, and has in all respects dealt with said property as the actual owner thereof and your petitioners believe and therefore aver that the said Louis Buckner is either the real owner of said property, or has a substantial interest therein and that the defendants herein are merely holding the legal title thereto and that the said Louis Buckner should be made a party defendant in this action and bound by any decree of this honorable court passed in this cause." They further stated that, just prior to the filing of the bill of complaint, the defendants with Louis Buckner, for the purpose of defeating the rights of the petitioners, had executed a mort-

gage on the same property which had been sold by them to the Mayflower Savings & Loan Association for $2,990; that, while Louis Buckner was financially responsible, Alexander A. Buckner and Elsya Buckner were not, and that, unless Louis was made a party defendant and bound by any decree which might be passed in the case, the petitioners would be seriously prejudiced in their rights, etc. And they prayed (1) that they be permitted to amend their bill (1) by making Louis Buckner a party defendant, and (2) by adding thereto an additional paragraph to be known as "paragraph 7A," to read as follows: "That while the defendants, Alexander A. Buckner and Elsya Buckner, hold the record title to the said property No. 405 South Bond Street, the said Louis Buckner originally purchased and paid for said property and took title therefor in the name of the said Alexander A. Buckner and Elsya Buckner, his wife, who are merely the nominal owners of said property and that the defendant, Louis Buckner, was, prior to the making of said contract of sale with your orators, the real owner of said property, has exercised full control thereof, negotiated the sale of said property to your orators with the full acquiescence of the said Alexander A. Buckner and Elsya Buckner, his wife, has received from your orators all payments which they made on account of the purchase price of said property and has retained said payments for his own use without accounting to the said Alexander A. Buckner and Elsya Buckner for said payments."

The court, by an *ex parte* order, allowed the amendments to be made as prayed, and in due course a subpoena was issued and served upon Louis Buckner. He appeared on November 26th, 1928, and moved the court to strike out its order of October 24th, 1928, to refuse to receive the petition upon which it was based, and to quash the subpoena. On the following day Alexander A. and Elsya Buckner demurred to the amended bill on the grounds (1) that it was "without equity"; (2) that the material facts stated in the amendment were known to the complainants when the original bill was filed; (3) that the plaintiffs were "on notice" at the time they filed their original bill of the mortgage re-

ferred to in the petition; and (4) that the amended bill was multifarious.

The court overruled both the motion and the demurrer, and from those orders these two appeals were taken.

Dealing first with the demurrer, we have, after a very careful examination of the amended bill, been unable to discover any force in the objections to it.

Briefly stated, in effect it charges that Alexander A. Buckner and Elsya Buckner, his wife, hold the legal title to the property in question under a secret trust for Louis Buckner, who is its real owner; that he bought it, paid for it, controls it, and has received and retained all the rent, income, and profits from it, which were paid under the agreement, and that while he, for some undisclosed purpose of his own, had the legal title to it placed in their names, they own it in name only; that Louis Buckner himself negotiated the contract in issue and that all payments made under it on account of the purchase price of the property were made directly to him, and that he retained such payments for his own use without accounting to Alexander A. or Elsya Buckner for them, that the contract was negotiated by Louis Buckner with the full acquiescence of Alexander A. and Elsya Buckner, and that under it they sold the property to the appellee for $5,000, and agreed that, upon the payment of that sum together with accrued interest and charges, they would convey it to him by a good and merchantable title, free of all liens except an outstanding ground rent; that they took possession of the property and paid Louis Buckner $7,327.70 on account of the purchase price and charges, and performed all the requirements the contract imposed upon them, but that the defendants refused to carry out their part of the contract or to convey the property to them; that shortly before this suit was instituted Louis Buckner joined Alexander A. Buckner and Elsya Buckner in executing a mortgage for $2,990 on the property, and that while Louis is financially responsible Alexander and Elsya are not.

These facts show a contract definite, full, and precise as to subject matter, parties, and terms, fair and mutual in all

its parts, and based upon a valuable consideration; that the complainants have fully performed all of its requirements, but that the defendants, after receiving over $7,000 from the complainants on account of it, now refuse to carry it out, and that the nominal owners, the holders of the legal title, who are financially irresponsible, executed a mortgage on the property in which the true owner joined, which would prevent them from conveying the property to the appellee "free of all liens" except the annual ground rent, as they agreed to do, and are sufficient to entitle the appellee to the relief prayed.

Assuming these facts, the only possible objection to the bill is that it does not specifically and in terms state that the plaintiffs are ready, willing and able to complete the purchase, or that the contract was made by Louis Buckner on his own behalf as well as on behalf of Alexander and Elsya Buckner, or whether it was oral or written, but as those facts are plainly and naturally inferable from the facts stated, we do not regard that omission as vital, and in our opinion the complainants in their amended bill have stated a case which entitles them to relief in equity. Appellants further object that the bill is defective because the facts charged in the amendment were known to the complainants when they filed their original bill, that proper exhibits were not filed with it, and that it is multifarious. Taking these in their order, we know of no rule which prevents a complainant from amending his bill by incorporating therein allegations of fact omitted through inadvertence or error, whether within his knowledge when the bill was filed or not. Indeed, the proper office of an amendment is to correct just such errors or inadvertences, that the whole case and all its facts may be before the court.

Neither is the bill multifarious. It is directed to a single purpose, the performance of a single contract, and the only parties to it are those who may be affected by a decree executing that purpose and are therefore proper parties. *Miller's Equity Proc.*, secs. 108, 110; *Beachey v. Heiple*, 130 Md. 691; 36 *Cyc.* 767.

Nor is there any substance in the objection that necessary exhibits were not filed with the amended bill. The amendment was made after testimony had been taken on the issues raised by the original bill and the answers thereto, and, since the requisite proof of all written instruments referred to in the original bill was or could have been supplied before the amendment, the objection that such exhibits were not filed with the original bill came too late. *Butler v. Rahm,* 46 Md. 549. And the amendment itself referred to no written instrument, and called for no exhibits. So that in our opinion the demurrer to the amended bill was properly overruled, and the decree from which the first appeal was taken will accordingly be affirmed.

After the court had permitted the appellees to amend their bill in the manner described, Louis Buckner moved the court to rescind its order, to refuse to receive the petition asking for the amendment, and to quash the subpoena served upon him, and the second appeal is from the court's order overruling that motion. It presents two questions, (1) Was Louis Buckner a proper party defendant to the amended bill, and (2) had the court the power to permit an amendment naming him a party after testimony had been taken and the case heard on the original bill. Both of these questions must be answered in the affirmative.

It is said in *Pomeroy on the Specific Performance of Contracts* (3rd Ed.), sec. 483: "The general doctrine, as supported by the weight of American authority, is that all persons who are interested in the enforcement of the contract *must be,* and all those directly and specifically interested in the subject-matter *may be* joined as parties to the suit for a specific performance." And *Fry,* after stating the English rule, which is contrary to the American rule, says: "If a stranger to the contract gets possession of the subject-matter of the contract with notice of it, he is or may be liable to be made a party to an action for specific performance of the contract upon the equitable ground of his conscience being affected by the notice. * * * Again, a stranger to the contract may so mix himself up with it by

setting up a claim to some benefit resulting from it, as to render himself liable to be made a party to proceedings for the enforcement of the contract; as, for instance, by claiming to be interested in the purchase money under an arrangement antecedent to the contract." *Fry on Spec. Perf.* (6th Ed.), secs. 206, 208. Again in 36 *Cyc.* 767, it is said: "Contrary to the rule of the English and Federal courts, it is a generally accepted rule in this country that all persons interested in the subject-matter of the suit may properly be joined as parties, and are sometimes necessary parties. This is the fundamental doctrine of equity concerning parties."

Applying that rule to the facts before us, there can be no doubt that Louis Buckner was not only a proper but a necessary party. It is conceded that he actually owns and controls the property, that he negotiated the contract for its sale to the appellees, that he took all the benefits under it and that, in violation of its terms, he joined the holders of the record title in placing a lien on it, which, in view of their financial irresponsibility, prevents them from performing it. Under such circumstances it would be impossible for the court to afford full and complete relief to the complainants, or to finally adjudicate the rights of all parties interested in the contract, unless he is a party.

Nor can it be questioned that the court, in permitting the amendment, acted in the legitimate exercise of a sound judicial discretion, under the power conferred upon it both by the statute and by the General Equity Rules adopted by this court.

Code, art. 16, sec. 17, provides that "upon application of either plaintiff or defendant to any court of equity, he shall have the right, upon payment of such costs as the court may direct, to amend at any time before final decree, the bill of complaint, answer, pleas, demurrers, or any of the proceedings in any cause before the court, so as to bring the merits of the case in controversy fairly to trial," and General Equity Rule 17 provides: "The court shall at any time before final decree, in furtherance of justice and upon such terms as to payment of costs as may be just, permit any bill,

answer, process, proceedings, pleading, or record to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading."

The statute and the rule together commit to the court a very wide discretion in allowing or refusing amendments, at any time prior to a final decree in the case, and, in the absence of abuse, ordinarily that discretion will not be reviewed. *Snook v. Munday,* 96 Md. 515; *Calvert v. Carter,* 18 Md. 107; *Warren v. Twilley,* 10 Md. 46. But where the amendment involves bringing in a new party, the situation is different from one in which it only affects parties already before the court. In such a case, as a matter of justice and reason, all opportunities and methods of defense open to the original parties should be open to the party brought in by amendment, and there seems to be no valid reason why such a party should not have the same right to have the action of the court making him a party reviewed before defending the suit that an original party would have. We are therefore disposed to consider the motion on its merits rather than to dismiss the appeal. For reasons which it is unnecessary to re-state, in our opinion Louis Buckner was a proper party defendant, so that the only question is whether the court had the power to make him a party defendant after all the testimony had been taken. Both the statute and the rule expressly authorize the amendment to be made at any time before final decree, and the only limitation they place upon the character of the amendment is that it shall be "in furtherance of justice." If, as we have decided, it was necessary to have Buckner before the court, in order to enable it to completely adjudicate the rights of all parties interested in the contract, and to give to the complainants full relief if they proved their case, then the amendment was certainly in "furtherance of justice" and properly allowed.

Appellants further suggest that it should not have been allowed because "it is entirely improper to bind a new party by testimony taken before he was made such a party." If the order appealed from had any such effect, that objection

would be unanswerable. 3 *Greenleaf on Evid.*, sec. 326; *Fletcher's Eq. Pl. & Pr.*, sec. 666; *Clary v. Grimes*, 12 G. & J. 31. But since it did nothing more than to make Louis Buckner a party defendant and require him to answer the amended bill, leaving all other matters to be dealt with as they occurred, that criticism is irrelevant.

We fully concur therefore in the order of the learned chancellor overruling that motion, and it will accordingly be affirmed.

> *Orders in Nos. 55 and 56 on the general docket of this court for the January term, 1929, affirmed with costs to the appellee, and cause remanded for further proceedings.*