WOLBERT *v.* RIEF ET AL.

[No. 98, October Term, 1949.]

646

*Decided March 9, 1950.*

Before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

Submitted on brief by *John Wood* for the appellant.

Submitted on brief by *Theodore F. Brown* and *A. Earl Shipley* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Carroll County, in equity, overruling a demurrer to an

amended bill of complaint. The original bill recited that on September 17, 1947 George S. Wolbert, individually and trading as Howard County Supply Company, entered into a written contract, thereto attached, to sell certain real and personal property and the business and good will of the Supply Company for $71,000, with a down payment of $10,000, to Nathan Rief. The property consisted of about three acres of land improved by a retail store and warehouse, machinery and tools used in the manufacture of cinder and concrete blocks, other machinery and tools used in the manufacture of concrete burial vaults, a number of motor vehicles, furniture and office equipment. The balance of the purchase price was to be paid within 45 days, during which time the business was to be conducted jointly. Accounts receivable and payable were not included in the sale. The seller agreed not to engage in the business of manufacturing cinder or concrete blocks, a builder's supply business, or a burial vault business for 15 years within a radius of 40 miles from the plant, but it was provided that the latter prohibition should cease if the buyer elected to resell such business in accordance with the contract.

The resale clause in question provided: "In the event Buyer should decide within one year from date hereof not to retain the burial vault business mentioned herein, Seller agrees to purchase said burial vault business from the Buyer for the sum of five thousand one hundred dollars ($5,100) within sixty days during said one year period by being advised in writing by Buyer's intention not to retain the said burial vault business."

The original bill recited that on October 15, 1947 Nathan Rief assigned all his right, title and interest in the contract to Merrell Rief and Robert Simon, who organized a partnership under the name of Howard County Supply Company, and subsequently, on December 31, 1947 formed a corporation under the name of Howard County Supply Company, Inc., which succeeded to the business and property. On April 1, 1948 notice in writing was given to Wolbert that the complainants (Nathan

Rief; Merrell Rief and Robert Simon, copartners; and Howard County Supply Company, Inc.) elected to exercise their option to resell the burial vault business within sixty days from that date but that Wolbert refused and still refuses to repurchase it. The original bill was filed March 4, 1949. The prayers were for specific performance and other and further relief.

Upon demurrer to this bill, the chancellor pointed out that if Nathan Rief, Merrell Rief and Robert Simon had transferred all their interest in the contract, they had no present interest and were not proper parties. Since the contract did not specify that the benefit of the option clause should run to assigns, he held that the corporation had no legal right to enforce the repurchase agreement. He sustained the demurrer with leave to amend.

The amended bill of complaint alleged that the assignment to Merrell Rief and Robert Simon on October 15, 1947 was made "with the express consent of the said George S. Wolbert", and that these assignees "took possession of the said business and property and ever since have remained in possession and control thereof"; that Merrell Rief is the son of Nathan Rief and Robert Simon is his son-in-law, and that Nathan Rief still has and retains a pecuniary interest in the business.

Upon demurrer to the amended bill, the chancellor remarked that the Howard County Supply Company, Inc., was "eliminated" but "it may be assumed that the pleader found the facts did not support the allegations of the original bill". He found the allegations of the amended bill sufficient.

The appellant complains that there is a variance between the allegations of the original and the amended bill in regard to the transfer to the corporation. It is sufficient to say that the demurrer admits the facts now alleged and their truth cannot be questioned at this stage of the case. "Where an amended bill is complete in all its parts, and is plainly intended as a substitute for the original bill, and is so accepted by the parties, it will be

taken as the only bill before the court, and the case will proceed upon its allegations alone as though there were no other bill in the case." *Conroy v. Southern Maryland Agricultural Ass'n,* 165 Md. 494, 505, 169 A. 802, 806. In the instant case the amendments did not change the character of the suit, but merely supplied allegations designed to correct alleged defects as to parties. The question before us is whether Merrell Rief and Robert Simon, upon the face of the amended bill, are entitled to maintain the suit. Nathan Rief is at least a proper party because of his pecuniary interest. *Buckner v. Jones,* 157 Md. 239, 246, 145 A. 550.

The resale option was an integral part of the original contract and a moving consideration for that transaction. *Trotter v. Lewis,* 185 Md. 528, 534, 45 A. 2d 329. The original seller obligated himself to repurchase part of the business assets for a fixed sum of money. In Williston, Contracts (Rev. Ed.) § 412 p. 1179, it is noted that "the commonest type of right subject to assignment is one for the payment of money."

In §415, the learned author states: "Some question has arisen of the power of one who holds an option to assign his right to another. An option if given for consideration or under seal is a contract, and the right of the promisee might be supposed to be as assignable as any other contractual right. But such an option is also an offer to enter into a further relation; namely, that of seller and buyer. And it is a general rule that an offer can be accepted only by the person to whom it is made. It seems reasonable where a contract right of value is concerned (an option often is of value) and when the performance of the offeree can be as effectively rendered by anyone as by him, that the rule applicable to revocable offers should not be pertinent. It is accordingly generally held that an irrevocable option (that is one which is a contract) can be enforced by an assignee. The rule is so stated in the Restatement of Contracts. [§ 155] * * * A few cases, however, have held that an irrevocable offer partakes of the same character as a re-

vocable offer in permitting acceptance only by the offeree." In Pomeroy, Specific Performance, (3d Ed.), § 487, it is said that a bill for specific performance may be brought by an assignee.

In the instant case, the amended bill alleges that the assignees are able and willing to transfer the business and personal property constituting the subject matter of the option, and that notice of the acceptance of the option was given within the time prescribed. It is immaterial whether the notice was given by the original buyer or the assignees, if they are able to perform. The case is not one in which performance is of a personal nature. *Cf. Eastern Advertising Co. v. McGaw*, 89 Md. 72, 42 A. 923, and *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 128 A. 280, 39 A. L. R. 1184. Nor did the contract forbid assignment. *Andrew v. Meyerdirck*, 87 Md. 511, 40 A. 173. We need not decide, however, whether the assignees could have compelled performance under the original bill, for it is now alleged that the assignment was made with the express consent of the original seller, before the date of settlement. In Williston, Contracts (Rev. Ed.) § 423, it is said: "Rights which would not otherwise be capable of assignment because too personal in their character, and duties, the performance of which for a similar reason could not be delegated, may be assigned or delegated if the contract so provides, or if in the absence of such a provision the other party consents." See also *Cochran v. Taylor*, 273 N. Y. 172, 7 N. E. 2d 89; Restatement, Contracts, §§ 159, 162; *Whiting v. William H. Crawford Co.*, 93 Md. 390, 401, 49 A. 615. The chancellor was clearly right in holding that the assignees had a standing to invoke the remedy.

The appellant contends that equity has no jurisdiction to enforce the option by a decree for specific performance, because it involves the transfer of personal property not of a unique character or value, and an action at law for the payment of a fixed sum of money would be an adequate remedy. The general rule was stated in *Equita-*

*ble Gaslight Co. v. Baltimore Coal-Tar & Mfg. Co.*, 63 Md. 285, 299: "It is certainly a well recognized general principle by courts of equity that they will not decree specific performance of contracts for the sale of goods and chattels, not, however, because of the nature of the property, the subject-matter of the contract, but because damages at law, calculated on the market price of the goods and chattels bargained for, furnish, in ordinary cases, an adequate redress to the purchaser for the breach of the bargain by the vendor". In the instant case, however, the option contemplated a resale, not merely of itemized goods and chattels, but of the "burial vault business", coupled with a release of the original seller from the restrictive covenant in connection therewith. It has been held that where the sale of personal property is incidental to the sale of a going business, equity may afford relief. See Pomeroy, Specific Performance (3d Ed.), § 16(e) p. 46, and cases cited in the note 152 A. L. R. 4, 61.

However, the short answer to this contention is found in Section 255, Article 16 of the Code, which provides: "No court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequate remedy in damages, unless the party resisting its specific enforcement shall show to the court's satisfaction that he has property from which such damages may be made, or shall give bond * * *." In *Neal v. Parker*, 98 Md. 254, 270, 57 A. 213, this statute was given effect in a case involving a contract for the sale of lumber procurable on the open market. See also *Teschner v. Falkenwalde*, 135 Md. 114, 117, 108 A. 467; *Baltimore Process Co. v. My-Coca Co.*, 144 Md. 439, 444, 125 A. 179, and *Pattison v. Brydon*, 150 Md. 575, 582, 133 A. 328. In *Laurel Realty Co. v. Himelfarb*, 191 Md. 462, 468, 62 A. 2d 263, 266, we held that the showing of financial responsibility or tender of a bond cannot be made on demurrer. See also *Armstrong v. Stiffler*, 189 Md. 630, 634, 56 A. 2d 808, 810, and *Edison Realty Co. v. Bauernschub*, 191 Md. 451, 458, 62 A. 2d 354, 357.

Finally, the appellant contends that the appellees are barred by laches, because the original bill was not filed until nine months after the date for performance under the option, eleven months after the notice of acceptance of the offer implicit in the option. It is true that very much shorter periods have been held fatal. *Emkey v. Siegel,* 192 Md. 571, 64 A. 2d 561; *Vincenti v. Kammer,* 189 Md. 523, 56 A. 2d 688; *Doering v. Fields,* 187 Md. 484, 50 A. 2d 553. In those cases, however, the question was presented after answer and the facts were fully developed. We also took judicial notice of the facts of a housing shortage and a fluctuating and rising real estate market. In *Clarke v. Brunk,* 189 Md. 353, 362, 55 A. 2d 919, 923, the appeal was from a decree sustaining a demurrer and dismissing the bill, but there was a delay of nearly five years and prejudice was shown on the face of the bill. We said: "Ordinarily the defense of laches involves not mere lapse of time (short of the period of limitations) but also some prejudice to the defendant and must be made by answer showing such facts. If, however, the bill on its face shows both lapse of time and prejudice or such lapse of time and circumstances as suggest prejudice or acquiescence and call for explanation—or in a specific performance case shows the plaintiff not to have been prompt and eager— the bill is demurrable. *Salisbury v. Camden Sewer Co.,* 135 Md. 563, 571, 109 A. 333; *Plitt v. Kaufman,* 188 Md. 606, 615, 53 A. 2d 673, 677." In the instant case we cannot find, upon the face of the bill, prejudice or such other circumstances as would bar relief. In so holding, however, we leave open any defense on the ground of laches that may be raised by answer.

*Order affirmed, with costs.*